IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| STEPHEN GIRON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:21-cv-2673-G-BN |
| | § | |
| CITY OF GREENVILLE and | § | |
| GREENVILLE POLICE DEPARTMENT, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Stephen Giron filed a *pro se* civil rights complaint against Defendant
City of Greenville and its police department. *See* Dkt. No. 3. Senior United States
District Judge A. Joe Fish referred Giron's lawsuit to the undersigned United States
magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing
order of reference. The Court granted Giron's motion for leave to proceed *in forma
pauperis* (IFP), *see* Dkt. Nos. 4, 5, subjecting his allegations to judicial screening
under 28 U.S.C. § 1915(e)(2). And the undersigned enters these findings of fact,
conclusions of law, and recommendation that the Court should dismiss Giron's claims
with prejudice.

**Applicable Background**

Giron claims that Greenville officials violated his civil rights by being derelict
in their duties and have thus endangered him and his family. *See* Dkt. No. 3 at 1.

Based on Utah state court filings attached to Giron's complaint, he is the
grandfather of two minor children. *See, e.g., id.* at 65-70. These records further show

that Giron, his wife, and his daughter (the mother of the children) moved to Colorado prior to March 2017. *See id.* And it appears that, while Giron's daughter and her ex-husband (Chris) shared legal custody of the children, the children remained in Utah at that time, but the Girons and their daughter retained a right to time with them. *See id.*

Giron alleges that, the last three years, he has searched for his grandchildren; in 2018, he received notice that Chris, along with his grandchildren, had relocated from Utah to Texas; and, in October of this year, he was notified by an investigator that Chris and the grandchildren were in Greenville, Texas. *See id.* at 2-3.

When he confronted Chris in Greenville, Chris "became violent and started screaming at" Giron. *Id.* at 3. Giron then called the police and requested that they do a wellness check on the children. *See id.* Officers did. *See id.* But, according to Giron, when they exited the house, "there was a noticeable change in [their] demeanor." *Id.* at 4. "The officers never once put eyes on my babies, but [they] took time to harass me" and "made sure to tell me they were unvaccinated and not being required to do so and standing less than 1 foot from me." *Id.* And Giron "was upset that they refused to check on [his] grandkids who," Giron alleges, "are at a high risk of abuse." *Id.*

According to Giron, this was "the first of many worthless attempts to get [Greenville police] officers to actually do their jobs" and that, "out of 5 separate welfare check calls[,] only 1 officer at the direction of his supervisor actually [laid] eyes on" the children. *Id.* at 5. Giron further asserts that this inaction violated his civil rights and that racism permeates the police department. *See id.* at 6-7.

He also alleges that an individual named Justin Richmond made a racially-motivated threat against him – "he made a shotgun cocking motion and a neck snapping movement with his hands and told me 'your gonna get hurt! If you don't leave we will shoot your black asses and then Texas will run you out!'" – but that, when Giron reported this to the police, they failed to act and told him that he "ain't Black" and "not Black enough to file" in response to Giron's assertion that he is a protected class. *Id.* at 8-9. According to Giron, Richmond then threatened his daughter – using racially-charged language aimed at her parents and threatening to shoot Giron and his wife – but the authorities refused to press charges. *See id.* at 10.

And Giron alleges that the day he told an investigator in the district attorney's office that he would file a civil rights complaint, that evening he was pulled over for failure to signal, and the officer "gave [Giron] a 'Warning' and suggested [that he] leave town." *Id.* at 11-12.

## Legal Standards

A district court is required to screen a civil action filed IFP and may summarily dismiss that action, or any portion of the action, if, for example, it fails to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). "The language of § 1915(e)(2)(B)(ii) tracks the language of Federal Rule of Civil Procedure 12(b)(6)." *Black v. Warren*, 134 F.3d 732, 733-34 (5th Cir. 1998) (per curiam).

And "[i]t is well-established that a district court may dismiss a complaint on its own motion under [Rule] 12(b)(6) for failure to state a claim upon which relief may granted." *Starrett v. U.S. Dep't of Defense*, No. 3:18-cv-2851-M-BH, 2018 WL 6069969,

at *1 (N.D. Tex. Oct. 30, 2018) (citing *Carroll v. Fort James Corp.*, 470 F.3d 1171 (5th Cir. 2006) (citing, in turn, *Shawnee Int'l, N.V. v. Hondo Drilling Co.*, 742 F.2d 234, 236 (5th Cir. 1984))), *rec. accepted*, 2018 WL 6068991 (N.D. Tex. Nov. 20, 2018), *aff'd*, 763 F. App'x 383 (5th Cir.) (per curiam), *cert. denied*, 140 S. Ct. 142 (2019).

A district court may exercise its "inherent authority ... to dismiss a complaint on its own motion ... 'as long as the procedure employed is fair.'" *Gaffney v. State Farm Fire & Cas. Co.*, 294 F. App'x 975, 977 (5th Cir. 2008) (per curiam) (quoting *Carroll*, 470 F.3d at 1177 (quoting, in turn, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)); citation omitted). The United States Court of Appeals for Fifth Circuit has "suggested that fairness in this context requires both notice of the court's intention to dismiss *sua sponte* and an opportunity to respond." *Id.* (quoting *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007) (quoting, in turn, *Carroll*, 470 F.3d at 1177); internal quotation marks and brackets omitted). These findings, conclusions, and recommendations provides notice, and the period for filing objections to them affords an opportunity to respond. *See, e.g.*, *Starrett*, 2018 WL 6069969, at *2 (citations omitted)).

Dismissal for failure to state a claim under either Rule 12(b)(6) or Section 1915(e)(2)(B)(ii) "turns on the sufficiency of the '*factual* allegations' in the complaint," *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam)), as neither the IFP statute nor the Federal Rules of Civil Procedure "countenance dismissal of a complaint for imperfect statement of the legal theory supporting the

claim asserted," *Johnson*, 574 U.S. at 11.

Instead, plaintiffs need only "plead facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they contend entitle them to relief. *Id.* at 12 (citing FED. R. CIV. P. 8(a)(2)-(3), (d)(1), (e)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* And "[a] claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679); *see also Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) ("'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" (quoting *Iqbal*, 556 U.S. at 679; citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008) ("[T]he degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context."))).

While, under Federal Rule of Civil Procedure 8(a)(2), a complaint need not contain detailed factual allegations, a plaintiff must allege more than labels and

conclusions, and, while a court must accept all of a plaintiff's allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A threadbare or formulaic recitation of the elements of a cause of action, supported by mere conclusory statements, will not suffice. *See id.*

This rationale has even more force here, as "*[p]ro se* complaints receive a 'liberal construction.' Even so, 'mere conclusory allegations on a critical issue are insufficient ....'" *Brown v. Tarrant Cnty., Tex.*, 985 F.3d 489, 494 (5th Cir. 2021) (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018), then *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989) (per curiam)). And "liberal construction does not require that the Court ... create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013).

"To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985))

"Ordinarily, 'a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed.'" *Wiggins v. La. State Univ. – Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) (per curiam) (quoting *Brewster v. Dretke*,

587 F.3d 764, 767-68 (5th Cir. 2009)). But leave to amend is not required where an amendment would be futile, *i.e.,* "an amended complaint would still 'fail to survive a Rule 12(b)(6) motion," *Stem v. Gomez*, 813 F.3d 205, 215-16 (5th Cir. 2016) (quoting *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014)), or where a plaintiff has already amended his claims, *see Nixon v. Abbott*, 589 F. App'x 279, 279 (5th Cir. 2015) (per curiam) ("Contrary to Nixon's argument, he was given the opportunity to amend his complaint in his responses to the magistrate judge's questionnaire, which has been recognized as an acceptable method for a *pro se* litigant to develop the factual basis for his complaint." (citation omitted)).

## Analysis

First, as to Giron's claims as asserted against the City of Greenville, "[a] person may sue a municipality that violates his or her constitutional rights 'under color of any statute, ordinance, regulation, custom, or usage.'" *Hutcheson v. Dall. Cnty., Tex.*, 994 F.3d 477, 482 (5th Cir. 2021) (quoting 42 U.S.C. § 1983; citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)). At the pleading stage, a plaintiff alleging such a *Monell* claim "has two burdens: to [plausibly allege] (1) that a constitutional violation occurred and (2) that a municipal policy was the moving force behind the violation." *Sanchez v. Young Cnty., Tex.*, 956 F.3d 785, 791 (5th Cir. 2020) (citing *Monell*, 436 U.S. at 694); *see also Hutcheson*, 994 F.3d at 483 (rejecting the argument that a district court errs by dismissing a *Monell* claim without first analyzing the underlying constitutional violation).

So, even if Grion has alleged a plausible constitutional violation, to allege liability as against the City, he must also

> identify "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda v. City of Hous.*, 291 F.3d 325, 328 (5th Cir. 2002) (cleaned up). Municipalities are not liable "on the theory of respondeat superior" and are "almost never liable for an isolated unconstitutional act on the part of an employee." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

*Hutcheson*, 994 F.3d at 482.

But Giron neither identifies a policy, custom, or policymaker. Nor does he plausibly allege (explain how) a policy or custom of the City was the moving force behind the alleged violations. *See Brown*, 985 F.3d at 497 & n.11 (noting that where a plaintiff's claim fails as to one prong, a court "need not consider whether [his] claim also fails the other two *Monell* prongs" (citing *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168-69 (5th Cir. 2010))).

Further, insofar as Giron named the Greenville police department as a defendant, a plaintiff may not bring a civil action against a servient political agency or department unless that agency or department enjoys a separate and distinct legal existence. *See Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313-14 (5th Cir. 1991). In *Darby*, the Fifth Circuit held that, "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id.* at 313. And, as judges in this district have repeatedly recognized, the police departments of Texas cities are not a jural entities subject to suit. *See, e.g., Hagwood v. Dall. Police Dep't*,

No. 3:15-cv-2622-L-BN, 2015 WL 6688721, at *3 (N.D. Tex. Sept. 11, 2015), *rec. accepted*, 2015 WL 6690045 (N.D. Tex. Oct. 30, 2015); *see also Combs v. City of Dall.*, 289 F. App'x 684, 686 (5th Cir. 2008) (per curiam) (affirming dismissal of "the DPD as a defendant because it is a servient political department that does not enjoy a separate and distinct legal existence from the City of Dallas," as the plaintiff failed to "show that the City of Dallas granted the DPD the capacity to sue or be sued as a separate and distinct entity" (citing *Darby*, 939 F.2d at 313)).

Even so, if the Court liberally construes Giron's claims as made against unnamed individual Greenville police officers – and Giron thus need not jump through the hoops set out above – his claims boil down to his belief that officials should have performed an investigation (such as the welfare checks on his grandchildren) in the manner and to the extent that Giron believes is necessary and satisfactory and that, by not doing so, the officers violated his civil rights.

But United States "Supreme Court precedent makes clear that a citizen does not have standing to challenge the policies of the prosecuting authority unless she herself is prosecuted or threatened with prosecution." *Lefebure v. D'Aquilla*, ___ F.4th ____, Nos. 19-30702, 19-30989, 2021 WL 4534030, at *1 (5th Cir. Oct. 5, 2021) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 617-19 (1973)). Thus, "[t]he Constitution does not compel government officials to investigate complaints by citizens." *Storey v. Schofield*, No. 14-1098-JDT-egb, 2016 WL 1421011, at *12 (W.D. Tenn. Apr. 8, 2016) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to

- 9 -

protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security.")); *accord Rossi v. City of Chi.*, 790 F.3d 729, 735 (7th Cir. 2015) ("We note at the outset that Rossi does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction. While *DeShaney* does not address police behavior specifically, the implication is clear: mere inactivity by police does not give rise to a constitutional claim." (citation omitted)). *See also Lefebure*, 2021 WL 4534030, at *3-*4 (In *Linda R.S.*, "the Court repeatedly emphasized 'the special status of criminal prosecutions in our system.' It is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in the executive branch. And so it is not the province of the judiciary to dictate to executive branch officials who shall be subject to investigation or prosecution. … As a result, courts across the country have dutifully enforced this rule in case after case – refusing to hear claims challenging the decision not to investigate or prosecute another person." (collecting cases; citations omitted)).

Put another way, Giron does not possess a protected interest in an adequate police investigation of his allegations. *See Harrington v. Cnty. of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010) ("[W]e have no trouble concluding that plaintiffs do not have a protected property interest in an investigation into their son's death. First, the duty to investigate criminal acts (or possible criminal acts) almost always involves a significant level of law enforcement discretion. That discretion precludes any

'legitimate claim of entitlement' to a police investigation." (discussing *Twn. of Castle Rock v. Gonzales*, 545 U.S. 748, 760, 756 (2005); citations omitted)).

Finally – again giving liberal construction to the facts that he provides (but not the conclusions that he makes) – Giron has not alleged a plausible equal protection claim. The undersigned raises the Equal Protection Clause considering the statements that Giron attributes to Richmond, who Giron does not identify as an officer, and because of the officers alleged comments to Giron. *See* Dkt. No. 3 at 8-11. But, "[b]ecause the Equal Protection Clause is 'concerned ... with equal treatment rather than with establishing entitlements to some minimum of government services, [it] does not entitle a person to adequate, or indeed to any, police protection.'" *McCauley v. City of Chi.*, 617 F.3d 611, 618 (7th Cir. 2011) (quoting *Hilton v. City of Wheeling*, 209 F.3d 1005, 1007 (7th Cir. 2000); citing *DeShaney*, 489 U.S. at 196).

"On the other hand, selective withdrawal of police protection, as when the Southern states during the Reconstruction era refused to give police protection to their black citizens, is the prototypical denial of equal protection." *Hilton*, 209 F.3d at 1007. But, while Giron alleges that a police lieutenant told him he was "not Black," Giron does not plausibly allege that officials denied him protection (or ignored him) based on his race. As he alleges, after the threats from Richmond, "I went to the police station and was told I can't press charges. I went to the DA's office that next morning to complain and they took a statement from me, but sent me back to the police to hand it in. I met with a lieutenant who was a bully. He told me only simple harassment charges would be filed but it would take months to investigate. He then

told me 'you['re] not Black' and 'I'm sure I'm part something' before being bullied and thrown out." Dkt. No. 3 at 10-11.

As to leave to amend, the undersigned concludes that Giron has stated his best case based on the lengthy complaint that he filed and thus justice does not require that the Court automatically grant him leave. The Court should therefore dismiss this lawsuit with prejudice under Section 1915(e)(2)(B).

That said, the time to file objections to these findings, conclusions, and recommendation (further explained below) allows Giron an opportunity to explain how he would cure the deficiencies outlined above and thus show the Court that leave to amend should be given. *See Scott v. U.S. Bank Nat'l Ass'n*, ___ F.4th ____, No. 21-10031, 2021 WL 5074689, at *2 (5th Cir. Nov. 2, 2021) (per curiam) ("A court should freely give leave to amend when justice so requires, FED. R. CIV. P. 15(a)(2), but a movant must give the court at least some notice of what his or her amendments would be and how those amendments would cure the initial complaint's defects. *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016). If the plaintiff does not provide a copy of the amended complaint nor explain how the defects could be cured, a district court may deny leave. *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 315 (5th Cir. 2002) (affirming denial of leave to amend where plaintiffs 'failed to amend their complaint as a matter of right, failed to furnish the district court with a proposed amended complaint, and failed to alert both the court and the defendants to the substance of their proposed amendment').").

## Recommendation

The Court should dismiss Plaintiff Stephen Giron's claims with prejudice under 28 U.S.C. § 1915(e)(2).

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: November 4, 2021

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE